UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | NO: 2:15-CR-0011-TOR |
|---|---|
| Plaintiff, | |
| v. | ORDER FOLLOWING SUPPRESSION HEARING |
| MICHAEL CURTIS PAINTER, | |
| Defendant. | |

BEFORE THE COURT is the Defendant's Motion to Suppress (ECF No. 32).  A pretrial conference and evidentiary hearing was held on March 26, 2015, in Spokane, Washington.  Defendant was present and represented by Andrea K. George and John S. Roberts, Jr.  Matthew F. Duggan appeared on behalf of the Government.  The Court reviewed the motion and the file therein, considered the testimony of the witnesses and heard from counsel, and is fully informed.  Defendant sought additional time to submit supplemental briefing regarding the suppression issue.  The Court has considered the supplemental briefing. ECF No. 52.  This order memorializes the Court's ruling on the motion.

ORDER FOLLOWING SUPPRESSION HEARING ~ 1

## DISCUSSION

Defendant seeks to suppress firearms and ammunition seized from an automobile he was driving. ECF No. 32. He contends the seizure was not authorized as a search incident to arrest nor by the automobile exception to the search warrant requirement. The Court agrees that these two exceptions did not authorize the search in question, but that a warrantless inspection for identification purpose does. Accordingly, the motion to suppress is denied.

From the testimony, the Court finds the following material facts: On December 3, 2013, shortly before 7:24 p.m., Spokane Police Department Corporal Shane Oien, travelling southbound on Division Street, saw a Dodge Stratus travel eastbound across Division Street from Carlisle Avenue, running the stop sign there. Corporal Oien sped up to the intersection, turned eastbound on Carlisle Avenue to pursue the Dodge. By then, the Dodge was turning northbound on Ruby Avenue. Corporal Oien closed the space between his police car and the Dodge and then activated his emergency lights. Just north of Buckeye Avenue the Dodge Stratus made a left turn into the Jack-in-the-Box restaurant parking lot and stopped. Corporal Oien stopped his car behind the Dodge Stratus. After two or three seconds, the Dodge Stratus accelerated, drove over the curb, exited the parking lot and proceeded southbound on Division Street. Because of a red light at the intersection of Buckeye and Division, and heavy traffic, the Dodge Stratus was not

1  able to travel southbound on Division Street.  The Dodge proceeded to the far right
2  hand side of Division Street, drove up onto the west sidewalk with two tires,
3  leaving two tires in the roadway and squeezed by the traffic, and then ran the red
4  light at the intersection.  A westbound truck struck the Dodge Stratus in the
5  intersection and both vehicles came to a stop, the Dodge Stratus next to the Army
6  Surplus Store.
7       The Dodge Stratus' airbags deployed and the driver's side door could not be
8  opened due to damage sustained in the collision.  Officers ordered the Defendant to
9  exit the vehicle through the passenger door.  He was then was handcuffed and
10 placed under arrest for attempting to elude a police vehicle.  He was seated on the
11 sidewalk about ten to fifteen feet from the vehicle.
12      Spokane Police Officer Flynn arrived at the accident scene and began to
13 prepare the accident report mandated by state law.  Officer Flynn approached the
14 passenger side of the Dodge Stratus and lifted the deployed airbag in an attempt to
15 retrieve the registration and insurance information from the glove box.  As Officer
16 Flynn lifted the airbag, he observed a butt of a handgun in the already opened
17 glove box.  Officer Flynn immediately notified Corporal Oien and the car was
18 subsequently towed and a search warrant obtained to reenter the vehicle to retrieve
19 the subject firearms and ammunition.
20 //

DISCUSSION

The Defendant contends and the Court agrees that *Arizona v. Gant*, 556 U.S. 332 (2009) does not authorize the intrusion in this case. Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. *Id.* at 351. Here, Defendant was handcuffed and seated ten to fifteen feet away from the vehicle—not within the reaching distance of the passenger compartment. Nor was it reasonable to believe the vehicle contained any conceivable evidence relevant to the crime of eluding. Thus, *Gant* does not justify the warrantless search in this case.

The Government contends there was probable cause to search for and seize the registration and insurance under the automobile exception. The Court disagrees. "If there is probable cause to believe a vehicle contains evidence of criminal activity, [*Ross*] authorizes a search of any area of the vehicle in which the evidence might be found. . . . *Ross* allows searches for evidence relevant to offenses other than the offense of arrest." *Gant*, 556 U.S. at 347 (*citing United States v. Ross*, 456 U.S. 798, 820–21 (1982). But here, there was no probable cause to believe the vehicle contained evidence of any suspected crime. The vehicle registration and vehicle insurance information did not evidence any crime

and no officer testified they sought this information for that purpose.

Officer Flynn testified that his role was to prepare a mandatory collision report. *See* RCW 46.52.030 (requiring accident reports on a form prescribed by the chief of the Washington State Patrol). The mandatory report calls for the drivers' information, vehicle information, insurance information and witness information.

The Ninth Circuit has long held the police are entitled to inspect a vehicle for the limited purpose of ascertaining the vehicle's registration. *United States v. Brown*, 470 F.2d 1120 (9th Cir. 1972). In *Brown*, the defendant was stopped for a traffic infraction, failed to produce a driver's license as required by Washington state law, responded vaguely to a question regarding the vehicle's ownership, failed to produce the vehicle registration as required by state law, and was found in the illegal possession of mace. *Id*. at 1122. On these facts, the Ninth Circuit held there was a right to inspect (and double-check) the vehicle for the limited purpose of ascertaining the vehicle's registration, despite having received registration information from a police dispatcher. *Id*. at n.1. The Ninth Circuit affirmed the district court's refusal to suppress the sawed-off shotgun observed in plain view on the floor of the vehicle when the vehicle's door was opened to locate the registration papers.

Despite *Brown*'s seemingly dated holding, the Ninth Circuit more recently validated it in *United States v. $109,179 in U.S. Currency*, 228 F.3d 1080 (9th Cir.

ORDER FOLLOWING SUPPRESSION HEARING ~ 5

2000). There, the Ninth Circuit stated that "police may conduct limited searches of vehicles to ascertain ownership on less than probable cause." *Id*. at 1088 (*citing Brown*). There too, the Ninth Circuit recognized the Supreme Court's holding on the subject in *New York v. Class*, 475 U.S. 106 (1986).

In *Class*, the defendant, stopped for two traffic violations, sought to suppress a gun, the handle of which the officer saw from the interior of the car while he was reaching for the papers that covered the vehicle identification number (VIN) inside the windshield. The Supreme Court recognized that the officer's reaching into the interior of the car to move the papers constituted a "search," *id*. at 115, but it held the warrantless search "sufficiently unintrusive to be constitutionally permissible," *id*. at 118–19. The Supreme Court reasoned that a motorist must surely expect that the pervasive regulation of vehicles by the government will on occasion require the State to determine the VIN of his or her vehicle and the individual's reasonable expectation of privacy in the VIN is thereby diminished. *Id*. at 113. This is especially true in the case of a driver who has committed a traffic violation. *Id*. (*citing Delaware v. Prouse*, 440 U.S. 648, 659 (1979) for the proposition that "[V]ehicle stops for traffic violations occur countless times each day; and on these occasions, licenses and registration papers are subject to inspection"). Justice Powell, in his concurring opinion joined by the Chief Justice, echoed the opinion of the court in stating that "[w]hen an officer lawfully has stopped a motor vehicle for a traffic infraction, the

ORDER FOLLOWING SUPPRESSION HEARING ~ 6

officer is entitled to inspect license and registration documents." *Id*. at 120. "[P]eople's expectations of privacy are much lower in their cars than in their homes." *Florida v. Jardines*, 133 S.Ct. 1409, 1419 n.1 (2013) (*citing New York v. Class*, amongst other cases)

Here, Officer Flynn's uncontested testimony that he merely pushed aside the airbag in order to attempt to find the registration in an open glove box is sufficiently uninstrusive to be constitutionally permissible. Especially since Defendant was involved in several traffic violations, the crime of eluding the police, and running a red light, all culminating in a serious automobile accident. Officer Flynn's viewing of the firearm in the already opened glove box, in plain view, did not violate Defendant's Fourth Amendment reasonable expectation of privacy.

**ACCORDINGLY, IT IS SO ORDERED.**

1. Defendant's Motion to Suppress (ECF No. 32) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** April 6, 2015.



　　　　　　　　　　THOMAS O. RICE
　　　　　　　　　United States District Judge

ORDER FOLLOWING SUPPRESSION HEARING ~ 7